## J. A. PAYNE ET AL. V. L. R. JONES ET AL.

[FILED OCTOBER 21, 1891.]

1. **Bills of Exceptions:** EXTENDING TIME FOR FILING. The Code authorizes the court to grant forty days from the final adjournment of the court in which to prepare a bill of exceptions. If this time is insufficient, the court, or a judge thereof, may extend the time in which to prepare such bill an additional forty days. If the judge before whom the cause was tried is absent from his district, another judge of the same district where there are two or more, may make an order extending the time.

2. ——: ——. Where the orders extending the time do not exceed eighty days from the adjournment of the court *sine die*, this court will not review the action of the judge in extending the time.

3. ——: AFFIDAVITS used on a hearing in the district court must be preserved in a bill of exceptions to be available in the supreme court.

4. **Review.** There being no material error in the proceedings, the judgment is affirmed.

ERROR to the district court for Custer county. Tried below before HAMER, J.

*H. M. Sullivan, Kirkpatrick & Holcomb, O. P. Mason,* and *Samuel J. Tuttle,* for plaintiffs in error.

*R. A. Moore, M. McSherry,* and *Judson C. Porter, contra,* cited: *McCarn v. Cooley,* 30 Neb., 552; *Olds Wagon Co. v. Benedict,* 27 Id., 344; *Seward v. Klenk,* Id., 615; *Edwards v. Carney,* 13 Id., 502; *McCarn v. Cooley,* 30 Id., 552; *Schaffroneck v. Martin,* 9 Id., 39; *Jefferson Co. v. Saxon,* 10 Id., 15; *Birdsall v. Carter,* 16 Id., 422; *Jordan v. Flinn,* 17 Id., 518.

MAXWELL, J.

This action was brought by the defendants in error against the plaintiffs in error in the district court of Cus-

ter county, to recover for the conversion of a stock of goods and destruction of business.

On the trial of the cause the jury returned a verdict in favor of the defendants in error for the sum of $2,800. A motion for a new trial was thereupon filed and overruled, and judgment entered on the verdict.

A motion is now made to quash the bill of exceptions, because it was not submitted to the attorneys for the defendants in error within forty days after the adjournment of the court.

The trial took place before Judge Hamer, and he appears to have been absent from his district when an extension of time was sought, hence application was made to Judge Church, who extended the time ten days, within which the bill was prepared and submitted to the attorneys of the adverse party.

It is claimed that Judge Church had no authority thus to extend the time, and that his action in the premises was void. We think differently however. The statute authorizes a court to grant forty days from the time of final adjournment for parties to prepare bills of exceptions and submit them to the adverse parties. As it is frequently impossible to prepare bills in forty days, the statute authorizes a judge, upon a showing satisfactory to him, to extend the time an additional forty days in which to prepare the bill. This is a remedial statute, and is to be liberally construed in favor of justice. A judge is thus given power to extend the time in all to eighty days in which to prepare a bill of exceptions, and the reasons which induced him to extend such time are not open to collateral inquiry. Motions of this kind are not to be encouraged, and probably the ends of justice would be subserved if the court, in all cases, would refuse to quash a bill of exceptions when duly signed by the proper officer; but, however this may be, there is no solid ground for the motion in this case, and it is overruled.

2. A motion is also made to strike certain affidavits from the files. These purport to have been used in the court below, but are not preserved in the bill of exceptions. This motion must be sustained.

In a very large number of cases this court has held that evidence of any kind used on a hearing in the court below, to be available in this court, must be preserved in a bill of exceptions, otherwise there would be no assurance that such evidence had been so used and the court would be liable to be imposed upon.

3. The action is based on a breach of the following contract:

"Whereas L. R. Jones and Neils Anderson, doing business under the firm name of Jones & Anderson, having executed to the People's Bank (J. A. Payne) their notes for $4,000, dated April 6, 1889; one for $1,326.47, due May 6, 1889; one for $1,336.77, due June 6, 1889; and one for $1,336.77, due July 6, 1889; and to secure the same have executed a real estate mortgage on a certain farm in Buffalo county owned by L. R. Jones and on lots 1 and 2, block 3, in Mason City, Custer county, Nebraska, and have also executed a chattel mortgage on their entire stock of goods in Mason City, Nebraska, consisting of all kinds of goods in their stock, the possession of the same is this day turned over to the said J. A. Payne; and whereas the said J. A. Payne has already advanced the sum of $1,326.47 on said mortgage and are to advance the balance of said $4,000 at such times and in such amounts as may hereafter be agreed upon as the said Jones & Anderson may need it to liquidate their indebtedness, and the said Payne is to take possession of said stock of goods and sell the same at ordinary retail trade and account for all the money so taken in, until the said $4,000 is fully paid, and to keep the said stock replenished with what staples are necessary to keep up said stock, the said Jones & Anderson to donate their time in assist-

ing to dispose of said stock; but it is understood and agreed that they are to have no control of the possession, but the entire business is to be turned over to the said J. A. Payne, and all invoices to be received by and he places H. J. Cook in possession, who is to act as the agent of said Payne and be under his control.

> "L. R. JONES AND NEILS ANDERSON,
> "J. F. BALDWIN,
>> "*Cashier People's Bank.*

. "Mason City, Neb., April 10, 1889."

The plaintiffs in error seem to have taken possession under said agreement at the time of the date thereof and continued in possession until about July 13 of that year, when they seem to have discharged Cook and excluded the defendants in error from the business, and thereafter sold the goods under a mortgage. The reason given by the plaintiff in error Payne, as set forth in his answer, is as follows: "That on or about April 6, 1889, the plaintiffs were largely indebted for merchandise previously purchased, to-wit, in the sum of about $4,000, which amount was due and payable and were without money or other means to meet said indebtedness, and being pressed for payment thereof came to this defendant and desired him to assume said indebtedness and to pay the same, and thereupon this defendant took from said plaintiffs, and to pay the same, the said notes and mortgage in plaintiff's petition mentioned and at the same time advanced to said plaintiffs the said sum of $1,326.47, which was applied on said indebtedness and assumed the remainder of said indebtedness then owing by the plaintiffs to the amount of $3,060, which defendant has since paid; that at the same time the plaintiffs and this defendant entered into a verbal agreement to the effect that this defendant was to immediately take possession of said stock of goods embraced in said mortgage, and to sell the stock therein mentioned in the ordinary course of retail trade for cash, the proceeds to be

applied first to pay the indebtedness created by the purchase of the necessary staples to replenish said stock and the balance, if any, to be applied on the notes hereinbefore mentioned given by the plaintiffs, the said plaintiffs to assist in the carrying on of said trade and sales, and defendant was to keep said stock replenished with the necessary staples, and by the terms and intent of said contract, if the amount derived from the sale of said stock should, at the time of maturity of said notes, equal the indebtedness contracted by purchasing said staples, and the amount of the indebtedness as evidenced by said notes given by the plaintiffs, then, and in that event, defendant was to turn back to the plaintiffs the said stock remaining unsold and fixtures, otherwise the said stock of goods to be disposed of under and by virtue of said chattel mortgage and according to the terms therein contained; and the said defendant alleges that in pursuance of said agreement he took possession of said stock of goods on April 6, 1889, and proceeded to sell the same at retail trade, according to the terms of said agreement, and during said time purchased staples for the purpose of replenishing said stock, under the terms of said agreement, in all to the amount of $4,924.09; and the said defendant further alleges that while the plaintiffs were assisting in the sale of said goods, and on or about the 14th day of July, 1889, and for some time prior thereto, they fraudulently, and with intent to cheat and defraud this defendant, refused to turn over and account to him the amount of daily sales received by them while assisting in the sale of said goods, and fraudulently destroyed the account of said sales so made by them, and secretly and fraudulently removed from said store, without the knowledge or consent of this defendant, a large amount of the goods conveyed by said mortgage, and converted the same to their own use, and also converted to their own use the money received by them in their daily sales, as aforesaid, and that at the date of the maturity of said notes the amount of money derived from the sale of said

goods was insufficient to pay the bills for the said staples so purchased as aforesaid, and no part of said notes having been paid, but default having been made therein, this defendant proceeded to advertise and sell said stock, as by the terms of said mortgage and agreement made and provided, which sale was on September 25, 1889, and from which sale was realized the sum of $2,305; that on or about April 16, 1889, by a special agreement between plaintiffs and this defendant, clothing to the amount of $1,955 was sold out of said stock by this defendant and notes taken therefor which have since been paid; that the amount realized from the retail sale of said goods is the sum of $5,115.20, and that the total amount realized from all sources is the sum of $9,375; that this defendant has advanced to said plaintiffs and paid out on their indebtedness owing at the time said mortgage was given the sum of $4,381, and has paid for staple goods purchased to replenish said stock the sum of $4,924.09, and has paid for expenses in carrying on said business and advertising and selling said stock of goods the sum of $951.37; the total amount paid out by this defendant is the sum of $10,257.09; that there is now due to this defendant from said plaintiff the sum of $878.09, with interest from April 6, 1889, at the rate of ten per cent per annum, and interest on the remainder of the principal of said notes until paid by sales of property."

This answer was the principal issue in the case.

The proof clearly shows that on July 14 of that year the plaintiffs in error took possession of the stock of goods and sold the same, and after paying certain obligations converted the property to their own use. The questions involved seem to have been fairly submitted to the jury and substantial justice done.

It is unnecessary to review the instructions at length. The judgment is

AFFIRMED.

THE other judges concur.